**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | ) CHAPTER 11 <br> ) <br> ) CASE NO. 19-59440-pwb |
| P-D VALMIERA GLASS USA CORP, | ) |
| Debtor. | ) <br> ) |

**DEBTOR'S EMERGENCY MOTION TO AUTHORIZE PAYMENT OF PRE-PETITION WAGES, PAYROLL TAXES, CERTAIN EMPLOYEE BENEFITS AND RELATED EXPENSES, AND OTHER COMPENSATION TO EMPLOYEES**

COMES NOW P-D Valmiera Glass USA Corp., debtor and debtor-in-possession (the "**Debtor**") in the above-styled Chapter 11 case (the "**Case**"), and hereby files this motion (the "**Motion**") for entry of an order authorizing payment of pre-petition wages, payroll taxes, certain employee benefits and related expenses, and other compensation to employees. In support thereof, the Debtor respectfully represents as follows:

**INTRODUCTION**

1. On June 17, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date of this filing, no official committee of unsecured creditors has been appointed, and no request for the appointment of a trustee or examiner has been made.

2. The Debtor is a Georgia corporation and the only United States entity which is a member of Valmiera Glass Group. Valmiera Glass Group is comprised of Valmieras Stikla

Šķiedra, AS ("**VSS**")[1], the Debtor's Latvian parent company (located in Latvia), Valmiera Glass UK Ltd., a sister company to the Debtor (located in the United Kingdom), and P-D Valmiera Glass USA Corp. (located in Georgia).  Together with its parent and sister companies, the Debtor is a vertically integrated supplier of various composite materials to the aviation industry, architecture and other industries.  The Debtor's operations focus on the production and distribution of glass fibre and glass fibre products from its manufacturing facility in Dublin, Georgia.  The Debtor's business has been organized by two units.  "Phase I" became operational in 2015 and is engaged in the production of needle mats which provide insulation for industrial uses.  In 2017, the Debtor launched "Phase II" of its operations and built a fiberglass furnace for the production of glass fibre.  Phase II has proven to be unprofitable and a cash drain on the remaining portion of the Debtor's business.  Shortly before its Chapter 11 filing, the Debtor began shutting down the Phase II operations.

## JURISDICTION

3.      This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Sections 105(a), 363(b) and 507 of the Bankruptcy Code.

## BACKGROUND

5.      As of the Petition Date, the Debtor employed approximately 60 people (the "**Employees**").  Immediately prior to the filing, the Debtor had a workforce of approximately 437 employees, but terminated 377 employees (the "**Former Employees**") pre-petition in conjunction

---

[1] VSS is a publicly traded Latvian company which holds a 52% interest in the Debtor.  On June 17, 2019, VSS filed a Legal Protection Proceeding in Latvia in order to negotiate a restructuring agreement with its creditors.

with the closure of one of its manufacturing facilities related to the Phase II operations. Both the Employees and the Former Employees are owed certain Obligations (as defined below).

6. As described more fully below, the Debtor has incurred certain pre-petition obligations that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date. Even though arising prior to the Petition Date, these obligations (collectively, the "**Obligations**") will become due and payable in the ordinary course of the Debtor's business on and after the Petition Date. These Obligations can generally be categorized as follows: (i) wages, salaries, and other compensation; (ii) payroll taxes; (iii) health and welfare benefits; and (iv) other benefits. These Obligations are described generally as follows:

- *Wages, salaries, and other compensation* consist of pre-petition wages, salaries and commissions owed to Employees and/or Former Employees (the "**Payroll Obligations**"). The pre-petition Payroll Obligations total approximately $567,000.00. This gross amount includes certain deductions described separately below, such as payroll taxes owed by the employees. As of the Petition Date, some Payroll Obligations were unpaid because (a) they constitute salary, wages and commissions earned prior to the Petition Date but unpaid as of the Petition Date, or (b) certain paychecks issued pre-petition remained uncashed on the Petition Date. The Debtor estimates that the gross amount of the Payroll Obligations owed as of the Petition Date is approximately $567,000.00.

- *Payroll taxes* consist of federal, state, and local income taxes, social security, and Medicare taxes. The payroll taxes include the amounts owed by the employees that the Debtor withholds from the gross amount of the employees' wages or salary as well as the amounts separately owed by the Debtor. As of the Petition Date, the Debtor estimates that the employer owed portion of the pre-petition Payroll Taxes totals approximately $100,000.00.

- *Health and welfare benefits.* The Debtor sponsors several health and welfare benefit plans for their employees, including insurance plans relating to medical, health, dental, vision, disability, and life insurance (collectively, the "**Health and Welfare Plans**"). As of the Petition Date, the Debtor estimates that the employer owed portion of the obligations related to Health and Welfare Obligations totals approximately $90,000.00.

- *Other benefits.* The Debtor customarily offers various other employee benefit policies and programs, including reimbursing eligible employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtor. Such reimbursement obligations include travel and entertainment expenses incurred by the employees through the use of their own funds or credit cards. Because the employees do not always submit claims for reimbursement promptly, it is difficult for the Debtor to determine the exact amount of reimbursement expense obligations outstanding at any particular time.

## RELIEF REQUESTED

7. By this Motion, the Debtor seeks authority to pay the Employee and Former Employee Obligations that become payable during the pendency of this chapter 11 case, including that portion of Employee and Former Employee Obligations that had accrued pre-petition, and to continue at this time its practices, programs, and policies with respect to the Employees and Employee Obligations, as such practices, programs, and policies were in effect as of the Petition Date. Furthermore, because it is difficult for the Debtor to determine with precision the accrued pre-petition amount for many of the Employee and Former Employee Obligations, to the extent that the Debtor subsequently determines that there are any additional outstanding Employee and/or Former Employee Obligations related to the programs and policies described herein, the Debtor requests authority to pay such pre-petition amounts. The Debtor similarly requests that it be authorized to pay any cost or penalty incurred by any recipient of Employee Obligations in the event that a check issued by the Debtor for payment of the Employee and/or Former Employee Obligations is inadvertently not honored because of the filing of the Debtor's bankruptcy case.

## BASIS FOR RELIEF

**A.  Cause Exists to Authorize the Payment of the Employee and/or Former Employee Obligations.**

8. Pursuant to Sections 507(a)(4) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay"

- 4 -

earned within one hundred eighty (180) days before the Petition Date are afforded unsecured priority status to the extent the claims do not exceed the statutory limits. 11 U.S.C. § 507(a)(4).

9. As of the Petition Date, the Debtor does not believe there are any Employees or Former Employees for whom payments on Employee or Former Employee Obligations would exceed the statutory limit provided in Sections 507(a)(4). Accordingly, the Debtor believes that all of the Employee and Former Employee Obligations would constitute priority claims.

10. With respect to payment of other Obligations, this Court has authority to grant the relief requested herein pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b)(l) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to Section 105(a) of the Bankruptcy Code, a bankruptcy court has broad authority to enforce the provisions of the Bankruptcy Code either under the specific statutory language of the Bankruptcy Code or under equitable doctrines.

11. Moreover, courts have authorized debtors to pay pre-petition amounts pursuant to Section 363(b) when sound business justification exists, and the payments are necessary to the bankruptcy process. *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

12. Other courts also have recognized the applicability of the "necessity of payment" doctrine with respect to the payment of pre-petition employee compensation and benefits. *See, e.g., In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (noting that debtors may pay pre-petition wages when necessary to ensure employees remain on the job post-petition); *Ionosphere,* 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a Debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor."); *In re Gulf Air, Inc.*, 112 B.R. 152, 153–54 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages, benefits, and health, life, and workers' compensation insurance premiums). The Debtor submits that, as illustrated below, application of the "necessity of payment" doctrine is wholly warranted in this case.

13. Any delay in paying Employee Obligations will adversely impact the Debtor's relationships with its Employees and will irreparably impair the morale, dedication, confidence, and cooperation of the very people upon whom the Debtor relies in order for its business to be successful. The Debtor must have the support of its Employees in order for the Debtor's efforts in this chapter 11 case to succeed.

14. Moreover, absent an order granting the relief requested in this Motion, the Debtor's Employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. The stability of the Debtor will thus be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives.

15. Similarly, any delay in payment of Obligations to Former Employees will have a negative effect on the Debtor and its estate. These Former Employees have worked up to the eve of the bankruptcy filing and any amounts owed will likely be entitled to priority status. There is

no secured creditor with a perfected security interest in the Debtor's cash; therefore, there is no reason to delay payment to the Former Employees. Moreover, failure to pay these Obligations at this time will not only undermine the morale of the remaining Employees, but will encourage the Former Employees to seek immediate employment elsewhere. The Former Employees are highly trained with a specialized skill set and the Debtor anticipates that any purchaser of the Debtor's Phase II Assets will seek to employ the Former Employees. It is likely that as a condition of a sale transaction, a purchaser would require that the Debtor satisfy the Former Employee Obligations.

16. The Debtor does not seek to alter compensation, vacation, and other benefit policies in this Motion, and this Motion is not to be deemed an assumption or adoption of any agreement or policy providing for any such benefits. Instead, this Motion is intended only to permit the Debtor, in its discretion, to make payments consistent with those policies and to permit the Debtor, in its discretion, to continue to honor its practices, programs, and policies with respect to its Employees, as such practices, programs, and policies were in effect as of the Petition Date.

17. Relief similar to that requested herein has been granted by courts in other substantial chapter 11 cases in this District. *See, e.g., In re Beaulieu Group, LLC, et al.,* No. 17-41677 (Bankr. N.D. Ga. July 19, 2017) (Diehl, J.) [Doc. No. 35]*; In re AstroTurf, LLC*, No. 16-41504 (Bankr. N.D. Ga. June 29, 2016) (Bonapfel, J.) [Doc. No. 31]; *In re Hutcheson Medical Center, Inc.*, No. 14-42863 (Bankr. N.D. Ga. Nov. 25, 2014) (Bonapfel, J.) [Doc. No. 33]; *In re Miller Auto Parts & Supply Co.*, No. 14-68113 (Bankr. N.D. Ga. Sept. 18, 2014) (Diehl, J.) [Doc. No. 22]; *In re S. Reg'l Health Sys., Inc.*, No. 15-64266 (Bankr. N.D. Ga. Aug. 5, 2015) (Hagenau, J.) [Docket No. 39].

**B.      The Debtor's Bank Should Be Authorized to Honor and Pay Checks Issued and to Make Other Transfers in Respect of the Employee Obligations.**

18.     If the Court grants the relief sought herein, the Debtor requests that its banks and other financial institutions be authorized and directed, when requested by the Debtor and in the Debtor's sole discretion, to receive, process, honor, and pay any and all checks and electronic transfer requests drawn on the Debtor's accounts to pay the Employee and Former Employee Obligations, whether those checks or electronic transfer requests were presented prior to or after the Petition Date, and make other transfers necessary to implement these transactions provided that sufficient funds are available in the applicable accounts to make the payments and transfers. The Debtor represents that each of these checks can be readily identified as relating directly to the authorized payment of Employee and/or Former Employee Obligations.  Accordingly, the Debtor believes that checks and transfers other than those relating to such authorized payments will not be honored inadvertently.

19.     The Debtor similarly requests that it be authorized to pay any cost or penalty incurred by a person to which Employee and/or Former Employee Obligations are owed in the event that a check issued by the Debtor for payment of the Employee and/or Former Employee Obligations is inadvertently not honored because of the filing of the Debtor's bankruptcy case. Though the Debtor estimates any such costs or penalties to be *de minimis* in amount, if the Debtor is not authorized to pay such costs or penalties, then its Employees will suffer the exact type of harm that this Motion seeks to prevent, and the Debtor will suffer from loss of Employee goodwill.

**C.      Payment of Certain of the Employee and Former Employee Obligations Is Required by Law.**

20.     The Debtor seeks authority to pay deductions and payroll taxes to the appropriate entities.  These amounts principally represent Employee or Former Employee earnings that

- 8 -

governments, Employees, and judicial authorities have designated for deduction from Employees' or Former Employees' paychecks. Indeed, certain deductions, including contributions to the employee benefit programs and child support and alimony payments, are not property of the Debtor's estate because they have been withheld from employees' paychecks on another party's behalf. See 11 U.S.C. § 541(b). Further, federal and state laws require the Debtor and its officers to make certain tax payments that have been withheld from their Employees' or Former Employees' paychecks. See 26 U.S.C. § 6672 and 7501(a); see also *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because deductions and payroll taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize it to transmit payroll taxes to the proper parties in the ordinary course of business.

21.    Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interests of its estate and creditors, and should be granted in all respects.

22.    The Debtor submits that the facts cited herein illustrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Based on the foregoing, Bankruptcy Rule 6003, to the extent it is applicable, has been satisfied.

23.    To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Motion, the Debtor requests that such stay be waived.

## NOTICE

24.     Notice of this Motion has been provided to the Office of the United States Trustee, and the Debtor's twenty (20) largest unsecured creditors.  In light of the nature of the relief requested, the Debtor submits that no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court:

(a)     enter an order in the form attached hereto as Exhibit A authorizing payment of the Employee and Former Employee Obligations and authorizing the applicable financial institutions to honor and process all checks relating to Employee and Former Employee Obligations; and

(b)     grant the Debtor such other and further relief as is just and proper.

This 18th day of June, 2019.

                                                            Respectfully submitted,

                                                            SCROGGINS & WILLIAMSON, P.C.

| | |
|---|---|
| 4401 Northside Parkway | /s/ Ashley R. Ray |
| Suite 450 | J. ROBERT WILLIAMSON |
| Atlanta, GA 30327 | Georgia Bar No. 765214 |
| T:    (404) 893-3880 | ASHLEY REYNOLDS RAY |
| F:    (404) 893-3886 | Georgia Bar No. 601559 |
| E:    rwilliamson@swlawfirm.com | MATTHEW W. LEVIN |
|        aray@swlawfirm.com | Georgia Bar No. 448270 |
|        mlevin@swlawfirm.com | |
| | *Proposed Counsel for Debtor* |

# EXHIBIT A

# Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | )    **CHAPTER 11** |
| | ) |
| **P-D VALMIERA GLASS USA CORP,** | )    **CASE NO. 19-59440-pwb** |
| | ) |
| **Debtor.** | ) |
| | ) |

**[Proposed] ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, PAYROLL TAXES, CERTAIN EMPLOYEE BENEFITS AND RELATED EXPENSES, AND OTHER COMPENSATION TO EMPLOYEES**

Upon consideration of the motion (Doc. No. __) (the "**Motion**")[2] of the Debtor for an order authorizing payment of pre-petition wages, payroll taxes, certain employee benefits and related expenses, and other compensation to employees; and jurisdiction existing for the Court to consider the Motion; and the Court having found that good and sufficient cause exists for granting the Motion; and upon consideration of the files and records in this case; and upon the arguments and statements in support of the Motion presented at the hearing before the Court; and it appearing that

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

relief sought in the Motion will be in the best interests of the Debtor's estate, creditors, and other parties-in-interest; and it further appearing that notice of the Motion was adequate and proper under the circumstances and that no further notice of the Motion need be given;

it is hereby ORDERED as follows:

1. The Motion (Doc. No.___) is GRANTED.

2. The Debtor is authorized, but not directed, to pay all Employee and Former Employee Obligations that become payable during the pendency of this chapter 11 case, including that portion of Employee and Former Employee Obligations that had accrued pre-petition, and to continue at this time its practices, programs, and policies with respect to the Employees and Employee Obligations, as such practices, programs, and policies were in effect as of the Petition Date. The Debtor is also authorized, but not directed, to the extent that the Debtor subsequently determines that there are any additional outstanding Employee and Former Employee Obligations related to the programs and policies described in the Motion, to pay such pre-petition amounts.

3. The Employee and Former Employee Obligations that the Debtor is authorized to pay are described in the Motion and include, without limitation, the following Employee Obligations: (i) wages, salary and other compensation; (ii) payroll taxes; (iii) vacation programs; (iv) health and welfare benefits; and (v) other benefit programs.

4. Except as set forth herein, the Debtor is authorized (but not directed) to continue to pay the Employee and Former Employee Obligations that become payable during the pendency of this chapter 11 case and to continue at this time its practices, programs, and policies with respect to the Employees and the Employee Obligations, as such practices, programs, and policies were in effect as of the Petition Date.

5. The Debtor's banks and other financial institutions are authorized and directed, when requested by the Debtor and in the Debtor's sole discretion, to receive, process, honor, and pay any and all checks and electronic transfer requests drawn on the Debtor's accounts to pay the Employee and Former Employee Obligations, whether those checks or electronic transfer requests were presented prior to or after the Petition Date, and make other transfers necessary to implement these transactions provided that sufficient funds are available in the applicable accounts to make the payments and transfers. The Debtor is further authorized to pay any cost or penalty incurred by its Employees or Former Employees in the event that a check issued by the Debtor for payment of the Employee or Former Employee Obligations is inadvertently not honored because of the filing of the Debtor's bankruptcy case.

6. The banks and other financial institutions that process, honor, and pay any and all checks or electronic transfers on account of Employee and Former Employee Obligations shall rely on the representations of the Debtor as to which checks are issued and authorized to be paid in accordance with this Order without any duty of further inquiry and without liability for following the Debtor's instructions.

7. Neither this Order, nor the Debtor's payment of any amounts authorized by this Order, shall: (i) result in any assumption of any executory contract by the Debtor; (ii) result in a commitment to continue any plan, program, or policy of the Debtor; or (iii) impose any administrative, pre-petition, or post-petition liabilities upon the Debtor.

8. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

9. The requirements of Bankruptcy Rule 6003(b) have been satisfied. To the extent the fourteen day stay of Bankruptcy Rule 6004(h) may be construed to apply to the subject matter of this Order, such stay is hereby waived.

10. Counsel for the Debtor is directed to promptly serve a copy of this Order on the Office of the United States Trustee and the Debtor's twenty (20) largest unsecured creditors, and to file a certificate of service with the Clerk of the Court.

### [END OF DOCUMENT]

Prepared and presented by:

SCROGGINS & WILLIAMSON, P.C.

---

J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
MATTHEW W. LEVIN
Georgia Bar No. 448270
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T:      (404) 893-3880
F:      (404) 893-3886
E:      rwilliamson@swlawfirm.com
        aray@swlawfirm.com
        mlevin@swlawfirm.com

*Proposed Counsel for the Debtor*

## Distribution List

Ashley R. Ray
SCROGGINS & WILLIAMSON, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA  30327

Martin P. Ochs
OFFICE OF THE UNITED STATES TRUSTEE
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303