# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 19-59440-pwb |
| | ) | |
| P-D VALMIERA GLASS USA CORP., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | JUDGE BONAPFEL |
| | ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

COMES NOW P-D Valmiera Glass USA Corp. (the "**Debtor**"), debtor and debtor in possession in the above-styled Chapter 11 case (the "**Case**"), pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001, and files this Motion for Bank to Use Cash Collateral (the "**Motion**") seeking entry of an order authorizing the Debtor to use cash collateral on an interim and final basis. In support of the Motion, the Debtor shows the Court as follows.

### Jurisdiction and Venue

1.

This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.

On June 17, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date of this filing, no official committee of unsecured creditors has been appointed, and no request for the appointment of a trustee or examiner has been made.

3.

The Debtor is a Georgia corporation and the only United States entity which is a member of Valmiera Glass Group. Valmiera Glass Group is comprised of Valmieras Stikla Šķiedra, AS ("**VSS**")[1], the Debtor's Latvian parent company (located in Latvia), Valmiera Glass UK Ltd., a sister company to the Debtor (located in the United Kingdom), and P-D Valmiera Glass USA Corp. (located in Georgia). Together with its parent and sister companies, the Debtor is a vertically integrated supplier of various composite materials to the aviation industry, architecture and other industries. The Debtor's operations focus on the production and distribution of glass fibre and glass fibre products from its manufacturing facility in Dublin, Georgia. The Debtor's business has been organized by two units. "Phase I" became operational in 2015 and is engaged in the production of needle mats which provide insulation for industrial uses. In 2017, the Debtor launched "Phase II" of its operations and built a fiberglass furnace for the production of glass fibre. Phase II has proven to be unprofitable and a cash drain on the remaining portion of the Debtor's business. Shortly before its Chapter 11 filing, the Debtor began shutting down the Phase II operations.

4.

The Debtor's parent company, VSS, is party to one or more credit agreements with AS SEB Banka, as security agent for certain lenders (in such capacity, the "**Bank**"), who made certain loans to VSS prior to the Petition Date for which the Bank contends it is owed in excess of $50 million. The Bank asserts that the Debtor executed a Guaranty and Security Agreement dated as of June 28, 2017, whereby it guaranteed the obligations of VSS to the Bank. In connection therewith, the Bank asserts liens and security interests in the Debtor's interests in real and personal

---

[1] VSS is a publicly traded Latvian company which holds a 52% interest in the Debtor. On June 17, 2019, VSS filed a Legal Protection Proceeding in Latvia in order to negotiate a restructuring agreement with its creditors.

property used in the operation of its business (the "**Property**"), which consists of, *inter alia*, accounts, inventory, and general intangibles. The Bank also asserts that the proceeds received from Property consisting of accounts receivable is "cash collateral" as defined in 11 U.S.C. § 363(a).

**Relief Requested**

5.

The Debtor seeks entry of an order authorizing the use of cash collateral in accordance with a proposed budget which is being negotiated with the Bank and will be filed with the Court at or before any hearing on this Motion.

6.

The Debtor's use of cash collateral is essential to the continued operation of its business, to maintain the value of the Property and for an effective reorganization. The Debtor does not propose to use cash collateral to pay any amounts due and owing prior to the Petition Date unless approved by order of the Court. However, because of the nature of the Debtor's business, it must have use of cash collateral to meet its ongoing obligations and to preserve the value of its assets. Therefore, the use of cash collateral is in the best interest of the Debtor, its estate and its creditors.

7.

The Debtor is willing to provide adequate protection for the use of cash collateral as follows:

(a)     The Bank shall be given a replacement lien in post-petition accounts receivable and proceeds thereof to the extent such pre-petition liens are a valid, properly perfected and enforceable interest, and in the same relative priority; and

(b)  Cash collateral may only be used for items set forth in a budget to be approved by the Court.

WHEREFORE, the Debtor requests that this Court: (a) schedule an interim hearing on this Motion to be heard on or before July 1, 2019; (b) enter an order granting this Motion at the conclusion of such hearing, in substantially the form attached hereto as <u>Exhibit A</u>; and (c) grant the Debtor such other and further relief as is just and proper.

This 25th day of June, 2019.

                                          Respectfully submitted,

                                          SCROGGINS & WILLIAMSON, P.C.

| | |
|---|---|
| 4401 Northside Parkway | /s/ J. Robert Williamson |
| Suite 450 | J. ROBERT WILLIAMSON |
| Atlanta, Georgia 30327 | Georgia Bar No. 765214 |
| T: (404) 893-3880 | ASHLEY REYNOLDS RAY |
| F: (404) 893-3886 | Georgia Bar No. 601559 |
| E: rwilliamson@swlawfirm.com | |
|    aray@swlawfirm.com | *Proposed Counsel for the Debtor* |

## **Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 19-59440-pwb** |
| | ) | |
| **P-D VALMIERA GLASS USA CORP.,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | **JUDGE BONAPFEL** |
| | ) | |

**INTERIM ORDER ON DEBTOR'S MOTION FOR AUTHORITY TO USE CASH
COLLATERAL AND NOTICE OF FINAL HEARING**

This matter came before the Court for hearing on July __, 2019 (the "**Hearing**") on the *Motion for Authority to Use Cash Collateral* (the "**Motion**") filed on June ___, 2019 [Dkt. No. ___], by the Debtor, P-D Valmiera Glass USA Corp. (the "**Debtor**"), in the above-captioned chapter 11 case, (1) requesting authority to use Cash Collateral (as defined below) pursuant to Section 363 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**") and (2) seeking authorization to provide adequate protection to AS SEB Banka, as security agent for certain lenders (in such capacity, the "**Bank**"), secured lender under a Guaranty and

Security Agreement dated as of June 28, 2017 (the "**Guaranty and Security Agreement**"), pursuant to which the Debtor guaranteed indebtedness of its parent company, VSS, to the Bank.

Based upon the Court's consideration of the Motion, and all matters brought to the Court's attention at the Hearing, pursuant to Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure, and after due deliberation and consideration, the Court, based on the representations made on an interim basis, makes the following findings of fact and conclusions of law applicable to the Debtor's use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*)

A. **Petition Date**. On June 17, 2019 (the "**Petition Date**"), the Debtor filed with the Court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

B. **Pre-Petition Debt and Liens.**

The Bank asserts that as of the Petition Date the Debtor was indebted to the Bank under the Guaranty and Security Agreement for loans to the Debtor's parent company, VSS, in excess of $50 million (the "**Pre-Petition Debt**"). As security for the payment of the Pre-Petition Debt, the Bank asserts that the Debtor granted to the Bank pursuant to the Guaranty and Security Agreement and related documents (collectively, the "**Pre-Petition Loan Documents**"), security interests in and liens (collectively, the "**Pre-Petition Liens**") upon all of the Debtor's interests in real and personal property, including, without limitation, the following items: (i) accounts, payment intangibles, instruments, intercompany claims, and other rights to receive payments of the Debtor (including, without limitation, the accounts), whether now existing or hereafter arising or acquired, (ii) related general intangibles (including, without limitation, contract rights and

intellectual property), chattel paper, documents, supporting obligations, letter-of-credit rights, commercial tort claims set forth in schedules to the Guaranty and Security Agreement, remedies, guarantees and collateral evidencing, securing or otherwise relating to or associated with the property in subpart (i) above, including, without limitation, all rights of enforcement and collection, (iii) all goods (including all inventory, all equipment, all motor vehicles and all fixtures), (iv) books and records of the Debtor evidencing or relating to or associated with any of the foregoing, and (iv) collections, accessions, receipts and all proceeds of any and all of the foregoing (all such property, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof, the "**Pre-Petition Collateral**").

        C.      **Need for Use of Cash Collateral.**  The Debtor requires the use of Cash Collateral to continue operating its business, including making payroll, paying vendors and suppliers for post-petition obligations, and meeting ordinary working capital expenses.  Potentially irreparable harm to the Debtor, its creditors and its estate may occur absent authorization for the use of Cash Collateral.

        D.      **Service of Motion; Objections**.  The Debtor has certified that copies of the Motion and notice of the Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the parties identified on the Limited Service List as provided in the Procedures for Complex Chapter 11 Cases pursuant to General Order 26-2019.  The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

E. **Finding Cause**. Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtor to use Cash Collateral during the Interim Period (as defined below). The Debtor's need for use of Cash Collateral is ongoing, immediate and critical. Entry of this Order will preserve the assets of Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

F. **Jurisdiction; Core Proceeding; Venue**. This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2). Venue for this Chapter 11 case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

G. **Adequate Protection.** The Bank has requested and is entitled to adequate protection of its interests in the Pre-Petition Collateral under 11 U.S.C. §§ 361 and 363 as set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1. **Grant of Motion; Bank to Use Cash Collateral.**

(a) Subject to all of the terms, conditions and limitations of this Order, the Debtor shall be authorized to use Cash Collateral (as defined below) for Permitted Purposes (as defined below) during the period (the "**Interim Period**") commencing on the Petition Date, and ending on the date of the Final Hearing (defined below). The Interim Period may be extended by written agreement of the Debtor and the Bank.

(b) The term "**Cash Collateral**" shall mean all monies (i) in the possession of the Debtor on the Petition Date consisting of Pre-Petition Collateral, and (ii) received by the Debtor

4

after the Petition Date in respect of or arising out of Debtor's use, sale, consumption, collection, or other disposition of any Pre-Petition Collateral or Replacement Collateral (as defined below).

(c)     The term "**Permitted Purposes**" shall mean the use by the Debtor of Cash Collateral in the ordinary course of the Debtor's business solely for the purposes of supporting the Debtor's ongoing working capital needs, to the extent and up to the amounts set forth in the budget attached to this Order (as may be amended with the written consent of the Bank and the Debtor, the "**Budget**"), including a ten percent (10%) permitted variance on aggregate disbursements during any calendar week.  Notwithstanding the foregoing, no Cash Collateral may be used pursuant to the Budget or otherwise to pay any pre-petition claim against the Debtor other than amounts specifically approved by the Court after notice and hearing.

2.     **Collection of Accounts Receivable**. The Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and all other rights to the payment of money and shall cause all such collections remitted by its customers and other account obligors to be promptly deposited in the Debtor's debtor in possession accounts, which may consist of deposit accounts in existence prior to the Petition Date and used in connection with the Debtor's pre-petition cash management system.

3.     **Cash Collateral Subject to The Bank's Liens**.  Until expended by the Debtor, all Cash Collateral shall remain subject to the liens and claims of the Bank under the Pre-Petition Loan Documents and this Order.

4.     **Termination of Bank to Use Cash Collateral**. The Debtor's authority to use Cash Collateral shall automatically terminate for all purposes (except to pay the Pre-Petition Debt of the Bank) upon the soonest to occur of the following events or conditions:  (i) the Interim Period expires; (ii) a Chapter 11 trustee is appointed; (iii) this Chapter 11 case is converted to a Chapter

7 case or dismissed; (iv) the Court enters an order granting the Bank relief from the automatic stay or prohibiting the use of Cash Collateral by the Debtor; or (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of the Bank.

     **5.**     **Adequate Protection**.  As adequate protection for any diminution in the value of the Bank's interests in the Pre-Petition Collateral, including, without limitation, any diminution resulting from the use of Cash Collateral, the Bank is hereby granted (in the same priority as existed in the Pre-Petition Collateral, and only to the extent that the prepetition liens and interests of the Bank is valid, binding, enforceable and non-avoidable), pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens on and security interests in (collectively, the "**Adequate Protection Liens**") (i) all personal property of the Debtor that is of a kind or nature described as Collateral in the Pre-Petition Loan Documents, whether existing or arising prior to, on or after the Petition Date, and (ii) all other personal property of the Debtor, wherever located and whether created, acquired or arising prior to, on or after the Petition Date, including, without limitation, all of the Debtor's goods (including, without limitation, inventory and equipment), chattel paper, instruments (including all promissory notes), documents, deposit accounts, letters of credit, banker's acceptances, letter-of-credit rights, supporting obligations, investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts), monies, credit balances, deposits, commercial tort claims, books and records, vehicles, and intellectual property (all such personal property, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Replacement Collateral**"; and together with the Pre-Petition Collateral, the "**Collateral**").  Notwithstanding the foregoing, the Replacement Collateral shall not include any claims or causes of action of the Debtor under 11 U.S.C. §§ 544, 547, 548 or 550

("**Avoidance Actions**") or any proceeds of any of such claims or causes of action ("**Avoidance Proceeds**").  The Adequate Protection Liens shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative of the Debtor's estate, and any security interest or lien upon the Debtor's assets that is avoided or otherwise preserved for the benefit of the Debtor's estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Adequate Protection Liens.  The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of the Bank pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens.  The Bank shall not be required to file or record financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect such security interests and liens.

    **6.**  **Superpriority Claim.**  The Bank has requested adequate protection and shall be entitled to an administrative priority claim under Section 507(b) of the Bankruptcy Code in the amount, if any, by which the protections afforded herein for the Debtor's use, sale, consumption or disposition of any Pre-Petition Collateral (including, without limitation, Cash Collateral) prove to be inadequate to protect the Bank's interest in such Pre-Petition Collateral; <u>provided</u>, <u>however</u>, that nothing in this Order shall prohibit the Debtor from seeking to grant a superpriority claim under Section 364(c)(1) of the Bankruptcy Code (with a priority senior to the administrative priority claims granted to the Bank hereunder) to a post-petition debtor-in-possession lender to the Debtor, subject to the Bank's right to object and approval of the Court after notice and a hearing.

7. **Access to Premises and Records; Reporting**.

(a) The Bank and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours upon reasonable notice, to conduct on-site field examinations in order to inspect and evaluate the Debtor's property and financial records.

(b) The Debtors will continue to provide to the Bank all reporting as may be required under the Pre-Petition Loan Documents.

8. **Survival of Provisions of This Order**. The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing this Chapter 11 case or converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

9. **Reservation of Rights**. Nothing in this Order shall constitute or be construed to (a) be an admission by the Bank as to the adequacy of the protection provided herein; (b) release, impair or alter in any way the obligations and liability of any guarantor of the Pre-Petition Debt or any subordination of other obligations of the Debtor in favor of prior payment of the Pre-Petition Debt; (c) prohibit the Bank from seeking any further relief in this Chapter 11 case, including, without limitation, additional adequate protection, dismissal or conversion, relief from the automatic stay under Section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; (d) constitute a waiver by the Debtor or the Bank of the right to request in a further interim or final order on Cash Collateral

8

provisions which may be different from or in addition to any of the provisions contained in this Order; or (e) preclude the Debtor, any creditor, any Committee or any subsequently appointed trustee from objecting to or otherwise challenging the validity or amount of the obligations to, or liens asserted by, the Bank.

   **10.** **Order Immediately Effective; Survival**.  Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, the effectiveness of this Order shall not be stayed, and this Order shall be immediately effective upon its entry.  The provisions of this Order shall survive any dismissal or conversion of this chapter 11 case.

   **11.** **Notice of Final Hearing; Service of Order**.  **A final hearing on the Motion will be held at \_\_:\_\_ \_\_.m. on July \_\_, 2019, at Courtroom _____, United States Bankruptcy Court, Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303** (the "**Final Hearing**").  Promptly after the entry of this Order, the Debtor shall serve a copy of this Order, the Motion (and all exhibits to the Motion), and a notice of the Final Hearing, upon the parties identified on the Limited Service List as provided in the Procedures for Complex Chapter 11 Cases pursuant to General Order 26-2019, and the Debtor shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Final Hearing.

**END OF DOCUMENT**

Prepared and presented by:

SCROGGINS & WILLIAMSON, P.C.

_____
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559

4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com

10

## Distribution List

J. Robert Williamson
SCROGGINS & WILLIAMSON, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA 30327

Martin P. Ochs
OFFICE OF THE UNITED STATES TRUSTEE
75 Ted Turner Drive, SW
362 Richard B. Russell Bldg.
Atlanta, GA 30303

Gary W. Marsh
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308