

**IT IS ORDERED as set forth below:**

**Date: August 28, 2025**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

P-D VALMIERA GLASS USA CORP.,

Debtor.

CASE NO. 19-59440-PWB

CHAPTER 11

## ORDER DENYING MOTION FOR
## RECONSIDERATION OF PAYMENT OF CLAIM NO. 10

Lamonta James is a former employee who had filed a prepetition employment

discrimination lawsuit against P-D Valmiera Glass USA Corp.  His attorneys in the

litigation signed and filed a proof of claim on his behalf for $1,000,000, listing their

office address as the place where notices and payments should be sent.  [Proof of Claim No. 10].

The Liquidating Trustee under the confirmed plan of liquidation in this case in the course of making distributions to unsecured creditors mailed a check payable to Mr. James in the amount of $56,000 to Mr. James's home address, which appeared on the W-9 tax form that Mr. James had submitted at the Liquidating Trustee's request. The check represented 5.6% of his filed, allowed claim, the percentage all similarly situated unsecured claimants received. Mr. James received and cashed the check and notified the attorneys that he had done so.

The case was closed on May 10, 2023.

About two years after the payment, the attorneys, Malcolm Palmore, Markus Boenig, and James B. Cronon, (the "Movants") filed a motion[1] [Doc. No. 580] (the "Motion") to reopen the case "to permit Movants to be properly compensated in accordance with the law."  Motion at 5, ¶ 2.  Contending that the Liquidating Trustee erred in disbursing a check directly to Mr. James when it should have been made payable to them as co-payees and mailed to them, Movants request reconsideration of Claim # 10 "because it was not properly paid" and that the Court order the Trustee to properly pay Claim #10 by "collecting, recovering, and reissuing payment to the appropriate parties in accordance with 11 U.S.C. § 704(a)(1).  Motion at 5, ¶¶ 3-4.

---

[1] Motion for Reconsideration or in the Alternative Motion to Reopen Bankruptcy for the Limited Purpose of Addressing Claim # 10 [Doc. No. 580].

The Court conducted a hearing to consider the Motion and the Liquidating Trustee's opposition to it [Doc. No. 584]. At the hearing, the Court concluded, and the Movants and the Liquidating Trustee agreed, that it was appropriate to reopen this case for the purpose of determining whether the Liquidating Trustee is liable to the Movants based on the Liquidating Trustee's failure to make the distribution check payable to Mr. James and the Movants jointly and the mailing of the check to Mr. James's home address rather than to Movants' office. The parties further agreed for the Court to rule on the issues based on the undisputed facts as set forth in the Motion, the Liquidating Trustee's response, and the record, and as presented at the hearing.

For the reasons stated herein, the Court concludes that the Movants have failed to identify any redressable error committed by the Liquidating Trustee. The Court will, therefore, reopen the case but deny the substantive relief that the Movants request.

## I.    FACTUAL BACKGROUND

The Debtor filed a petition for relief under chapter 11 on June 17, 2019. Lamonta James timely filed claim number 10 in the unsecured, nonpriority amount of $1,000,000.00. Claim number 10 identifies Mr. James as the creditor [Claim No. 10, ¶ 1] and is signed by James Brian Cronon as Mr. James's "attorney or authorized agent." [Claim No. 10, Part 3]. The proof of claim further provides that notices pursuant to Bankruptcy Rule 2002(g) and payments should be mailed to Palmore Boenig & Associates, 575 Research Drive, Suite C, Athens, GA 30606, and includes an email address for Markus Boenig.

3

On December 4, 2020, the Court entered its Order confirming the First Amended Plan of Liquidation [Doc. No. 438] (the "Confirmed Plan"); [Doc. No. 496] (the "Confirmation Order"). The Confirmed Plan became effective on December 8, 2020 (the "Effective Date") [Doc. 502].

On the Effective Date and pursuant to the terms of the Confirmed Plan, the Liquidating Trust was created, and Advisory Trust Group, LLC was appointed as Liquidating Trustee. Confirmed Plan § 1.85, § 6.01, Schedule 6.01 (the "Liquidating Trust Agreement"). On June 14, 2022, the Court entered a Final Decree and closed the case.

Postconfirmation work continues in a case notwithstanding the closing of it.  In this case, the Liquidating Trustee, through its legal counsel and financial advisors, mailed a notice to Class Five unsecured creditors, including Mr. James, that the completion of a W-9 tax form and its return to the Liquidating Trustee's financial advisor was necessary before a distribution could be made (the "Tax Notice").  The Liquidating Trustee's counsel mailed the Tax Notice to Mr. James in care of the Movants, in accordance with the manner specified for notices in Mr. James's proof of claim. [Doc. 580, Exh. 2].

In response to the Tax Notice, Mr. James's attorneys responded in three ways. First, on August 3, 2022, Malcolm Palmore emailed a copy of the completed W-9 tax form to the email address identified in the Tax Notice.  In addition to attaching the tax

form, the email reads, "Please make our client's check out to Mr. Lamonta James and his attorneys at Palmore, Boenig & Associates, PC." [Doc. 580, Exh. 3].

Two days later, Mr. Palmore sent the W-9 tax form by certified mail to the financial advisor, again with the written request, "Please make our client's check out to Mr. Lamonta James and his attorneys at Palmore, Boenig & Associates, PC." [Doc. 580, Exh. 4].

Finally, in response to a November 29, 2022 email from the financial advisor Mr. Palmore again emailed the required W-9 tax form. [Doc. 584, ¶ 11].

Although no one has produced a copy of the W-9 tax form, the Liquidating Trustee contends, and Movants do not dispute, that it listed the Debtor's home address.

On February 14, 2023, the Liquidating Trustee mailed a final distribution check payable to Mr. James in the amount of $56,000.00 to his home address. Sometime thereafter, Mr. James cashed his distribution check.

The Movants allege that about a week later Mr. James contacted Palmore, Boenig & Associates, PC and informed Mr. Palmore that he'd received a check in the mail regarding his bankruptcy claim and had deposited it in his account.

After the Liquidating Trustee made final distributions to the holders of Class 5 claims, all remaining funds in the liquidating trust were delivered to a remnant purchaser. The case was closed on May 10, 2023.

5

At the hearing held February 27, 2025, Mr. James appeared and acknowledged that he had deposited the check.  It is unclear how much, if any, of the distribution remains unspent.

## II.    THE PARTIES' POSITIONS

Movants contend that the Liquidating Trustee's financial advisor erred when he disregarded the Movants' instructions to make the check payable to both Mr. James and his attorneys as co-payees and to mail it to the law firm's office and, instead, mailed a check payable only to Mr. James to his home address.  The Movants contend that this action resulted in their inability to recover their attorney fees that they otherwise would have been entitled to recover for their representation of Mr. James on his prepetition claim against the Debtor.

Movants seek reopening of the case pursuant to 11 U.S.C. § 350 "for the purpose of permitting Movants to be properly compensated in accordance with the law." [Doc. 580 at 5, ¶ 2].

In support of their request for relief, Movants seek reconsideration of Claim 10 pursuant to 11 U.S.C. § 502 on the theory that the mailing of the check to the Debtor's home address violated Rule 2002(g) of the Federal Rules of Bankruptcy Procedure. Movants request that the Court order the Liquidating Trustee to collect and recover the payment made to Mr. James and reissue the payment to the appropriate parties (in

their view, Mr. James and the Movants' law firm, payable jointly) in accordance with
11 U.S.C. § 704(a)(1).

The Liquidating Trustee counters that the Movants have no factual or legal basis
for the relief they seek because (1) Bankruptcy Rule 2002(g) is inapplicable to the
disbursement on Claim Number 10; and (2) the provisions of the Confirmed Plan do
not provide a remedy to the Movants because the error does not constitute gross
negligence or willful misconduct.

## III.    CONCLUSIONS OF LAW

The Court has carefully reviewed the parties' briefs, the terms of the Confirmed
Plan, and applicable law.  For reasons stated herein, the Court concludes that (1) no
ground exists for reconsideration of the treatment or the Liquidating Trustee's
payment of Mr. James's claim because 11 U.S.C. § 502(j) and Bankruptcy Rule
2002(g) are inapplicable to the circumstances here; and (2) the Movants have failed to
identify any redressable error committed by the Liquidating Trustee under the binding
terms of the Confirmed Plan.

### A.  No Basis For Reconsideration of the Claim Exists Under 11 U.S.C. § 502(j) or Bankruptcy Rule 2002(g)

The Movants contend that reconsideration of Claim Number 10 is warranted
under 11 U.S.C. § 502(j) because the Liquidating Trustee failed to comply with the
notice provisions of Rule 2002(g) of the Federal Rules of Bankruptcy Procedure when
it disbursed funds directly to Mr. James in payment of his claim.

7

Neither Section 502(j), which governs reconsideration of claims, nor Bankruptcy Rule 2002(g), which governs notices, is applicable here.

1. *Section 502(j) is inapplicable*

Section 502(j) provides, in relevant part, "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."

Claim Number 10 was filed in the amount of $1,000,000 as a general unsecured claim. No one objected to it. As a result, Claim Number 10 was an allowed claim that permitted Mr. James to receive his pro rata share of the funds available for the class of unsecured creditors under the Confirmed Plan. No one disputes this.

Section 502(j) is a means for reconsideration of the validity of a claim, the classification of a claim, and the allowance or disallowance of a claim. Section 502(j) is not a means for reconsideration of the manner of *disbursement of funds* to a claimant. The Movants have cited no case for the proposition that the Court may "reconsider" a claim under such circumstances.

2. *Movants Have Not Alleged a Violation of Bankruptcy Rule 2002(g)*

The Movants contend that the Liquidating Trustee should have mailed the distribution on Mr. James's claim to them at their address on the proof of claim. The Movants contend that the Liquidating Trustee and his professionals should have only

8

communicated with them, not Mr. James directly, based upon the requirements of

Bankruptcy Rule 2002(g) and that they have been economically harmed by the failure

to comply.

The applicable provision of Bankruptcy Rule 2002(g) is Rule 2002(g)(1),

which provides:

> (g) Addressing Notices.
>
>> (1) In General. A notice mailed to a creditor, indenture trustee, or equity security holder must be addressed as the entity or its authorized agent provided in its last request filed in the case. The request may be:
>>
>> (A) a proof of claim filed by a creditor or an indenture trustee designating a mailing address (unless a notice of no dividend has been given under (e) and a later notice of a possible dividend under Rule 3002(c)(5) has not been given); or
>>
>> (B) a proof of interest filed by an equity security holder designating a mailing address.

Bankruptcy Rule 2002(g) governs "notice." "Notice" is not defined in the

Bankruptcy Rules or Bankruptcy Code, but a review of other sections of Bankruptcy

Rule 2002 demonstrate that the notice requirements contemplated by Rule 2002(g)

identify (1) the types of hearings or motions that require notice; (2) the amount of

time (e.g., 21 days or 28 days) that a party is required to receive of a particular

hearing or event; (3) the party who must provide the notice (e.g., the Clerk, the

moving party, the United States trustee); (4) the parties entitled to notice of a hearing

or motion; and (5) the location where notice must be sent.

Nothing in Rule 2002(g) (or other subsection of Rule 2002) dictates the manner of mailing of plan distributions by a trustee to the holder of a claim. A plan distribution is not a "notice." Instead, a disbursement made to the holder of a claim is a matter governed by the terms of the Confirmed Plan as the Court discusses further in subsection III(B)(1).

**B. Movants Have Not Established a Basis For Recovery against the Liquidating Trustee or Its Professionals Under the Binding Terms of the Confirmed Plan**

The Court has reviewed the terms of the Confirmed Plan [Doc. 438], the Confirmation Order [Doc. 496], and the Liquidating Trust Agreement [Doc. 438, Sched. 6.01] and concludes that the Movants have asserted no basis for relief against the Liquidating Trustee or his professionals. This is because (1) Mr. James is the holder of the claim and the check was properly made payable to him; (2) the Movants are not holders of a claim in the case, notwithstanding their attempts to have the check made jointly payable to them with Mr. James; (3) Mr. James, the holder of the claim, actually received the payment; and (4) to the extent the Trustee's mailing of the check directly to Mr. James at his home address and not the address on the proof of claim was an error, it does not rise to the level of willful misconduct or gross negligence that would permit recovery from the Liquidating Trustee or his professionals.

*1. The Liquidating Trustee properly made the check payable to Mr. James as the holder of the claim*

Mr. James was a Class 5 unsecured creditor of the Debtor. Section 5.07 of the Confirmed Plan [Doc. 438] provides in pertinent part:

10

Class 5: Unsecured Claims. Class 5 consists of all Allowed Unsecured Claims, including the WARN GUC Claim. As soon as is reasonably practicable following the Effective Date, as determined by the Liquidating Trustee in his or her sole discretion, the Liquidating Trustee shall make a pro-rata Distribution to the Holders of Allowed Class 5 Claims of the Liquidation Proceeds less the Retained Proceeds. On each Distribution Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall make pro-rata Distributions to the holders of Allowed Class 5 Claims of any available Liquidation Proceeds less Retained Proceeds that remain in the Liquidating Trust, until the date on which all Allowed Class 5 Claims have been paid in full. If Liquidation Proceeds remain after all expenses of the Liquidating Trust and all Disputed Claims have either been reserved or an appropriate reserve established, Holders of Allowed Class 5 Claims shall be entitled to interest on their Allowed Class 5 Claim calculated at the post-judgment rate of interest for the State of Georgia.

Section 1.68 of the Confirmed Plan [Doc. 438] defines "Holder" of a claim as:

(a) as to any Claim:

   (1) the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

   (2) if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

   (3) if the owner or Holder of such Claim has transferred the Claim to a third party, advised the Debtor in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e).

To be clear, Mr. James is the "holder" of the claim as reflected on the Claim Number 10.  Therefore, the only person to whom the check could properly be made payable was Mr. James. FED. R. BANKR. P. 3001(f) ("A proof of claim signed and

filed in accordance with these rules is prima facie evidence of the claim's validity and amount.").

The Movants are not "holders" of a claim in the Debtor's bankruptcy case. When Movants sent Mr. James' W-9 form requested by the Trustee's financial advisor, the Movants attempted, in correspondence by email and certified mail, to have the check made payable to them jointly with Mr. James.[2]  But the Liquidating Trustee had no authority to obey such an instruction absent a filed notice of a transfer of the claim with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e) and § 1.68(a)(3) of the Confirmed Plan or, perhaps, an amended proof of claim to change the name of the holder of the claim.  Because neither of those things occurred, the Liquidating Trustee was required to pay the distribution on the claim to its holder of record, Mr. James.

As a result, the Liquidating Trustee did not err in making the check payable only to Mr. James.

> *2.  Movants do not have a claim against the Liquidating Trustee for the mailing of the check directly to Mr. James*

The Court turns to whether the Movants have a remedy for the Liquidating Trustee's mailing of the check to Mr. James at his home address on the W-9 form

---

[2] In an email to Mr. Alex Mazier, financial advisor to the Liquidating Trustee, on August 3, 2022, and by certified mail on August 5, 2022, Mr. Palmore wrote, "Please make our client's check out to Mr. Lamonta James and his attorneys at Palmore, Boenig & Associates, PC." [Doc. 580, Exh. 3, 4].

rather than the address for the Movants' law firm, the address that appears on Claim No. 10.

The Movants claim that they were injured by the mailing of the check to Mr. James because, after Mr. James received and cashed the check, he did not use the money to pay their fee. Nothing in the Motion or the record in this case states what efforts, if any, Movants have undertaken to have their client pay them. Instead, they want the Liquidating Trustee to recover the money from Mr. James and then disburse it to them. The Court interprets the Movants' position as asserting that the Liquidating Trustee is liable to them regardless of whether the money is recovered from Mr. James.

The Court accepts the proposition that, as a practical matter, mailing the check directly to Mr. James impaired Movants' ability to collect their fee. Had the check been delivered to them, they might have deposited the money in their trust account and then communicated with Mr. James about disbursement of the funds, including deduction of their fee in accordance with their contingent fee arrangement. In this sense, Movants have suffered some injury.

Nevertheless, the fact that the practical effect of Mr. James's direct receipt of the check impaired their ability to collect their fee does not mean that the Liquidating Trustee becomes responsible for collecting the fee from Mr. James or paying the fee itself.

As earlier discussion explains, Mr. James is the holder of the claim, Mr. James was entitled to a distribution under the Confirmed Plan, and Mr. James actually received the money.  Regardless of the way the money got to Mr. James, the fact is, he actually got it.  From the standpoint of the actual holder of the claim, any error in the manner of delivering the check could not possibly result in any harm.

The Movants, on the other hand, are essentially strangers to this case.  They are not creditors of the Debtor.  They have no claim against the Debtor. The Liquidating Trustee does not have any obligations to the Movants under the Confirmed Plan or the Liquidating Trust Agreement.   The fact that the Movants have a "stake" in Mr. James's recovery on Claim Number 10 based upon the contingency fee arrangement for representing him in his prepetition claim against the Debtor does not give them a claim in the case or a right to complain about any irregularity in the way that the Liquidating Trustee made a disbursement on the claim in the correct amount to the correct person.

Moreover, the cause of the Movants not being paid is the failure of their client to pay them from the money he received, not the Liquidating Trustee's disbursement of the money to him.

The Court thus concludes that the Movants do not have a claim against the Liquidating Trustee for delivery of the distribution check to Mr. James at his home address rather than to their office.

14

*3.  Even if the Liquidating Trustee breached a duty to the Movants that caused injury to them, the mailing of the check directly to Mr. James was not willful misconduct or gross negligence*

The Liquidating Trustee contends that, even if the handling of the distribution to Mr. James was improper, the Liquidating Trustee is not liable to the Movants because the terms of the Confirmed Plan permit claims against the Liquidating Trustee only for willful misconduct or gross negligence.

The Liquidating Trustee's liability for actions taken in making distributions pursuant to the Confirmed Plan is extremely limited in scope.  Section 9.04 of the Confirmed Plan provides in pertinent part (emphasis added):

> The Liquidating Trustee will make all Distributions to Liquidating Trust Claims under the Plan out of the Liquidation Proceeds (and, in the case of Distributions being made on the Consummation Date, out of Retained Proceeds). The Liquidating Trustee will have responsibility for determining pro rata Distributions (as necessary) and sending such Distributions to the appropriate holders of Claims. The duties of the Liquidating Trustee are limited to the ministerial functions set forth specifically in this Plan. *The Debtor, the Liquidating Trustee, the Estate, and the officers, directors, attorneys and other agents of the foregoing shall incur no liability for their respective actions (or failures to act) or conduct pursuant to this Plan except to the extent attributable to their willful misconduct or gross negligence.*

Thus, even if the Movants have a cognizable claim against the Liquidating Trustee, the Movants must show that the Liquidating Trustee's actions rise to the level of willful misconduct or gross negligence.  Both the Confirmed Plan and the Liquidating Trust Agreement provide that Georgia law is applicable and, therefore, the Court turns to how Georgia law defines "willful misconduct" and "gross

negligence." Confirmed Plan, [Doc. 438, § 15.05]; Liquidating Trust Agreement,
[Doc. 438, Sched. 6.01, § 17.3].

Under Georgia law, "willful misconduct" requires an "actual intention to do
harm or inflict injury." *2010-1 SFG Venture LLC v. Lee Bank & Tr. Co.*, 332 Ga.
App. 894, 902, 775 S.E.2d 243, 251 (2015). Georgia law defines "gross negligence"
as the absence of "slight diligence." O.C.G.A. § 51-1-4 ("In general, slight diligence
is that degree of care which every man of common sense, however inattentive he may
be, exercises under the same or similar circumstances. As applied to the preservation
of property, the term 'slight diligence' means that care which every man of common
sense, however inattentive he may be, takes of his own property. The absence of such
care is termed gross negligence."); *Heard v. City of Villa Rica*, 306 Ga.App. 291, 294,
701 S.E.2d 915, 919 (2010) ("Gross negligence has been defined as equivalent to the
failure to exercise even a slight degree of care.") (citations omitted).

The Court concludes that the record does not establish that the Liquidating
Trustee's mailing of the check payable to Mr. James to his residence rather than the
address of his attorney on the proof of claim is either willful misconduct or gross
negligence under these standards.

It is undisputed that the Liquidating Trustee made a distribution through a
check payable to Mr. James as the holder of an allowed claim in the correct amount
and that Mr. James received the check even though the Liquidating Trustee did not
mail it to the address shown on the proof of claim.

16

Movants have not alleged that the Liquidating Trustee had any "actual intention to do harm or inflict injury" on the Movants by making the check payable to Mr. James and by mailing it directly to him.  Nothing in the record supports such a finding.  Any error was not "willful misconduct."

Similarly, nothing in the record supports a finding that the Liquidating Trustee failed to exercise "slight diligence."  The record shows that the Liquidating Trustee required a W-9 form from claimants, including Mr. James, presumably for required tax reporting purposes.  The record further shows that the Liquidating Trustee mailed the check to Mr. James's address shown on the W-9 form rather than the address shown on the proof of claim.[3]  The record contains nothing else about the Liquidating Trustee's procedures.

It is undisputed that the Liquidating Trustee did not mail the check to the Movants' office as the proof of claim directed despite the receipt of directions from the Movants to do so.  But the Court cannot conclude on the record before it that this error was anything more than clerical oversight.

The Liquidating Trustee's duty was to distribute the proper amount of money to the persons entitled to it.  A decision to mail a check to a claimant at an address on a contemporaneously received, presumptively valid document like the W-9 form from

---

[3] Although the W-9 form is not in the record, no other plausible reason exists for mailing the check to Mr. James at his home because, among other things, this is the only way that the Liquidating Trustee would have Mr. James's home address.

Mr. James in this case, indicates an intent to send the money to the claimant where the

claimant will receive it.  These circumstances – and no others have been shown – do

not establish the "failure to exercise even a slight degree of care" and, therefore, do

not establish gross negligence that is required to hold the Liquidating Trustee liable.

## IV.  CONCLUSION

In summary, the Court concludes that no basis exists for the relief sought by

the Movants.  The Liquidating Trustee properly disbursed funds to Mr. James, the

holder of a Class 5 claim.  The mailing of the check to Mr. James at the address on the

W-9 rather than the Movants' address on the proof of claim does not give rise to a

redressable injury under the Bankruptcy Code, the Bankruptcy Rules, or the terms of

the Confirmed Plan, Order Confirming Plan, or the Liquidating Trust Agreement.  To

the extent the Movants have a remedy, it lies in the attorney-client agreement with

their client.

Based on the foregoing findings of fact and conclusions of law, it is here

ORDERED as follows:

1.  This case is reopened for the purpose of entertaining and ruling on the

Movant's Motion.

2.  Movants are not entitled to reconsideration of Claim No. 10 or to any relief

from the Liquidating Trustee.

3.  The Clerk is instructed to reopen this case, enter this Order on the docket,

and then proceed to close the case.

**END OF ORDER**

**Distribution List**

Colin Michael Bernardino
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309-4528

James B. Cronon
Law Office of James B. Cronon, LLC
Suite 5
269 N. Jackson Street
Athens, GA 30601

Malcolm Palmore
Palmore, Boenig and Associates, PC
575 Research Dr., Ste C
Athens, GA 30605